SOLIVELLAS & Co., Appellants, *v.* REGISTRAR OF PROPERTY OF AGUADILLA, Respondent.

No. 692.  Submitted November 7, 1927.—Decided December 16, 1927.

*López de Tord & Zayas Pizarro* for the appellants.  The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

There was presented in the registry of property of Aguadilla a deed of cancellation executed before notary Zayas Pizarro by Antonio Vicens as attorney in fact of the heirs of Trujillo Pizá on May 20, 1927, and it was recorded by the registrar as to the shares in the canceled credit corresponding to the heirs Dolores Costa, Juan Trujillo Torruella and José, Julio, Cándido and María Trujillo Costa, but denied admission to record as to the share of the other heir, Isabel Trujillo Torruella—

"because it does not appear from the power of attorney . . . . that the principal authorized the substitute appointed by the attorney in fact to delegate his power to another substitute."

It appears from the power of attorney exhibited with the deed of cancellation that Isabel Trujillo Torruella conferred

general power of attorney upon her husband, Jaime Pizá, authorizing him "to delegate his power in whole or in part, to revoke the delegations and make others, without any limitation."

In the exercise of the power given him by his wife Pizá delegated the entire power to Jaime Montaner and Jaime Montaner in turn delegated it to Antonio Vicens who also was appointed as their attorney in fact by the other heirs of Trujillo Pizá and, as already stated, he as the attorney in fact of all of the heirs, executed the deed of cancellation under consideration.

Therefore, the question to be considered and decided is whether a substitute under a power of attorney can delegate his power to another person without having been expressly authorized to do so by the principal.

It is stated by the appellants in their brief that they have not been able to find exact precedents in the jurisprudence of the Supreme Court of Spain or in that of the Supreme Court of Porto Rico. The registrar cites no case deciding the question involved, nor have we found any.

The original idea that the power was based solely on friendship and confidence seemed contrary to the substitution. Human relations and business intercourse were being extended in such manner that the delegation became necessary and so the Spanish Civil Code, advancing on the road opened by the Code of Napoleon, established that an attorney in fact could appoint a substitute unless forbidden to do so by the principal. Section 1721 of the Spanish Civil Code and section 1623 of the Revised Civil Code.

Based on that progressive movement imposed by necessity and on a judgment of the Supreme Court of Spain which appears in vol. XXI of the *Enciclopedia Jurídica Española,* p. 590, rendered on December 6, 1897, the appellants contend that the attorney in fact appointed by the substitute is placed exactly in the same situation as that of the original attorney

in fact and therefore has express authority to be substituted by another person.

The judgment of the Supreme Court of Spain cited held as follows:

"Considering the nature of the power and the rights and obligations arising therefrom, when an attorney in fact makes use of the power of substitution conferred on him by the principal, with or without the designation of the person of the substitute, it is evident that the power having been complied with in this respect, his act severs all legal connection between him and the principal, except in the case foreseen in sub-division 2 of section 1721 of the Civil Code, leaving in his place the substitute who from that moment is the only one having the character of attorney in fact in relation to the principal, and this is different from the case in which the first attorney in fact himself and not in the performance of the power, intrusts a third person with the performance of that which he is bound to do in his dealings with the person who conferred the power upon him."

There is no doubt about the principle established. When the attorney in fact directly appointed by the principal exercises the power of substitution which was expressly conferred upon him or assumes it and acts in accordance with the law he ceases in the performance of his trust and is freed from all subsequent relation with the exception of that which might spring from the liabilities imposed on him by the law itself. But does this mean that the person appointed by him as substitute can appoint another to substitute him and the latter another in his turn and so on indefinitely, without any express authority from the principal and when the case is expressly provided for and settled by law?

The contention of the appellants is not destitute of logic and deserves to be considered and taken into account; but the fact is that if we should adopt it and convert it into jurisprudence, we would invade a field of action which is not the province of the judicial, but rather of the legislative branch of the Government.

The power to substitute is held by the original attorney in fact both when he acts by virtue of the power expressly conferred on him by the principal and when he acts in pursuance of that which is conferred on him by law. It is on him, as personally elected, that the power is conferred. The original attorney in fact may choose another person for the performance of the duties with which he was intrusted, but unless so directed by the principal or by the law, he can not transmit to another person the power to appoint another in his place. It may be inferred from the very contents of the original power in the present case that such is the true legal construction. The attorney in fact was authorized to delegate the power in whole or in part and *to revoke the substitutions and make others without any limitation.*

Examining the question in the light of the American jurisprudence, we reach the same conclusion. The general rule on the continent, as set forth in Cyc., is as follows:

"An agent in whom is reposed trust or confidence, or who is required to exercise discretion or judgment, may not intrust the performance of his duties to another without the consent of his principal; and since all acts of agency involve discretion, and the very selection of agent ordinarily implies personal confidence in the agent chosen, it follows that one clothed with authority to act for a principal must ordinarily perform the act himself." 31 Cyc. 1425.

The exceptions to the rule are stated in the same work as follows:

"Clearly subagents may be appointed when their appointment has been expressly authorized by the principal, and in such case the agent assumes no liability for the acts of the subagent, who is directly accountable to the principal. The principal's consent to look to the subagent will be presumed when he knowingly assents to the substitution of another in place of the agent he appointed.

"Express authority to appoint subagents is not always necessary. Such authority is usually to be implied when the agency obviously and from its very nature is such as to make the employment of subagents necessary. In such cases the employment of subagents is presumed to have been contemplated when the power was

given, and the agent has implied authority to appoint such subagents within the limits of the necessities of the case. Hence he incurs no liability for the acts of such subagents if chosen with reasonable care, and the principal is bound by the acts of a subagent so employed, even though he has no personal knowledge of him. The converse of the proposition is equally true, and an agent has no implied power to delegate his power to a subagent when such· delegation is not necessary, proper, or usual.'' 31 Cyc. 1427, 1428.

By its very nature this case does not fall within the exceptions. Here it was a case of the cancellation of a mortgage debt.

We have consulted the jurisprudence of Louisiana whose civil·code is based on that of Napoleon which also served originally as a basis for our code, but it does not shed much light on the question at issue. According to it, under a general power the agent has authority to appoint a substitute. *Dubreuil* v. *Ronzan,* 1. Mart. (N. S.) 158, and the agent who appoints another in his place with the consent of the principal can not revive his extinct authority and bind his principal without his consent. Civil Code sections 2997, 2998, 2999; *Saul* v. *Lalaurie,* 1 La. Ann. 401. From the decisions it can not be inferred that he who acts by substitution has in his turn authority to appoint another person in his place.

Surely the transaction in the present case is a proper one, but from the manner in which it had been performed the registrar was bound to refuse the record. It can easily be ratified and the record then made without difficulty.

The decision of the registrar must be affirmed in the part appealed from.